# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*3:21 pm, Jul 19, 2022*

)
)
)
In re:                                    )
)                    Chapter 13
SHALONDA M. WHITE,                        )
)                    Number <u>21-60109-EJC</u>
*Debtor.*                                 )
_____)
)
SHALONDA M. WHITE,                        )
)
*Movant,*                                 )
)
v.                                        )                    Contested Matter
)
NEWREZ LLC d/b/a SHELLPOINT               )
MORTGAGE SERVICING,                       )
)
*Respondent.*                             )
)
)
_____)

## <u>OPINION ON MOTION TO DETERMINE</u>
## <u>MORTGAGE FEES AND EXPENSES</u>

Before the Court is the Motion to Determine Mortgage Fees and Expenses

(dckt. 36) filed by Shalonda M. White, the Debtor in this case. The Debtor filed this

1

case on July 9, 2021. Her largest creditor is NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), which holds a claim secured by a manufactured home. In her plan, the Debtor proposed to bifurcate Shellpoint's claim, limiting the secured portion of the claim to the amount of $7,300.00, the value of the manufactured home, pursuant to 11 U.S.C. § 506(a). Shellpoint filed a proof of claim in the fully secured amount of $26,528.77 on August 26, 2021, and objected to confirmation of the Debtor's plan on September 15, 2021. By way of a consent order entered on October 5, 2021, Shellpoint's objection to confirmation was resolved, and its claim was allowed in the secured amount of $8,268.73, with the balance unsecured. After the Debtor's plan was confirmed, Shellpoint filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges pursuant to Rule 3002.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on February 18, 2022, itemizing attorney's fees in the total amount of $1,275.00. In response, the Debtor filed the instant Motion to Determine Mortgage Fees and Expenses on March 31, 2022, asserting that Rule 3002.1 does not apply to Shellpoint's claim but also requesting that its asserted fees be disallowed. For the reasons set forth below, the Court finds that Rule 3002.1 does not apply and, further, that a determination of fees, expenses, and charges under Rule 3002.1 is not authorized.

## I. <u>Jurisdiction</u>

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B). The Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014(c) and 7052.

## II. <u>Findings of Fact</u>

The facts of this case are undisputed. On July 9, 2021, the Debtor filed a Chapter 13 petition. (Dckt. 1). Part 1 of Schedule A/B requires a debtor to describe each residence, building, land, or similar property in which the debtor has an interest. In response, the Debtor listed a 1997 General Admiral 24x60 Mobile Home located at 125 Brittany Lane, Sylvania, Georgia 30467.[1] (Dckt. 1, p. 11, ¶ 1.1). The Debtor indicated that the value of the property was $7,300.00. (Dckt. 1, p. 11, ¶ 1.1). In her Schedule D, the Debtor disclosed that Shellpoint held a claim in the amount of $26,700.00 secured by "125 Brittany Lane[,] Sylvania, GA 30467 Screven County 1997 General Admiral 24x60 Mobile Home." (Dckt. 1, p. 19, ¶ 2.1). In her plan, the Debtor valued the claim at $7,300.00 pursuant to 11 U.S.C. § 506(a) and proposed

---

[1] The Debtor further indicated that the mobile home was jointly owned by a non-debtor. (Dckt. 1, p. 11, ¶ 1.1). In her Schedule H, the Debtor listed Betty J. White, identified as deceased, as the co-debtor. (Dckt. 1, p. 29, ¶ 3.1). The loan documents attached to Shellpoint's proof of claim were signed by both the Debtor and Betty J. White. (Claim No. 2-1, pp. 10-12).

to make payments on the secured portion of the claim in the amount of $175.00 per month at 5.00% interest. (Dckt. 4, p. 2, ¶ 4(f)). The unsecured portion of Shellpoint's claim would be treated as a general unsecured claim, with general unsecured creditors to receive the greater of a dividend of zero or a pro rata share of $300.00. (Dckt. 4, pp. 3-4, ¶¶ 4(f), 4(h)).

On August 26, 2021, Shellpoint filed a proof of claim in the amount of $26,528.77 secured by a "1997 General Manufactured HSG D2356F 60x4 Manufactured Home" pursuant to a retail installment sales contract. (Claim No. 2-1, p. 2, ¶¶ 7-9). As the contract makes clear, the collateral securing Shellpoint's claim consists solely of the manufactured home and does not include any real property.[2] (Claim No. 2-1, p. 10). Subsequently, on September 15, 2021, Shellpoint objected to confirmation of the Debtor's plan. (Dckt. 20). Specifically, Shellpoint asserted that the Debtor's valuation of the manufactured home and proposed interest rate were both too low. Instead, Shellpoint sought a valuation of $13,692.22 and an interest rate of 6.25%. A consent order resolving Shellpoint's objection to confirmation was entered on October 5, 2021. (Dckt. 24). Under the terms of the consent order, Shellpoint's secured claim was valued at $8,268.73, which would be funded by the Chapter 13 Trustee with disbursements from the Debtor's plan

---

[2] This is further evidenced by the Debtor's disclosure in Schedule J that she pays $145.00 per month for "land rent." (Dckt. 1, p. 33, ¶ 21).

4

payments at 5.75% interest, and the balance of the claim would be unsecured. (Dckt. 24, pp. 1-2). On October 19, 2021, the Trustee moved to confirm the plan as amended, reciting that the terms of the consent order would be incorporated into the plan. (Dckt. 30). The Court confirmed the Debtor's plan on November 8, 2021. (Dckt. 33).

On February 18, 2022, Shellpoint filed, ostensibly pursuant to Bankruptcy Rule 3002.1(c), a Notice of Postpetition Mortgage Fees, Expenses, and Charges, which appears on the claims register. In the notice, Shellpoint itemized the following fees: (1) $475.00 for "Bankruptcy/Proof of claim fees" incurred on August 26, 2021; (2) $250.00 for "Proof of Claim 410A"[3] incurred on August 26, 2021; and (3) $550.00 for "Objection to Plan" incurred on September 15, 2021, for a total of $1,275.00. In response, the Debtor, on March 31, 2022, filed the instant Motion to Determine Mortgage Fees and Expenses under Bankruptcy Rule 3002.1(e). (Dckt. 36). Requesting that the itemized fees be entirely disallowed, the Debtor argued, first, that Bankruptcy Rule 3002.1 does not apply because the confirmed plan does not provide for contractual installment payments as required by subsection (a) of the rule and, second, that Shellpoint is not entitled to post-petition fees because it is an

---

[3] Official Form 410A ("Mortgage Proof of Claim Attachment"), an attachment to the proof of claim, requires a creditor whose claim is secured by a security interest in the debtor's principal residence to disclose, among other things, the loan payment history from the first date of default. (Claim No. 2, pp. 4-6). *See* Fed. R. Bankr. P. 3001(c)(2)(C).

under-secured creditor for purposes of 11 U.S.C. § 506(b). (Dckt. 26, p. 2). Shellpoint did not respond to the Debtor's motion.

A hearing on the Motion to Determine Mortgage Fees and Expenses was held on May 23, 2022. (Dckt. 37). At the hearing, the Court heard argument from Debtor's counsel; Shellpoint did not appear at the hearing. Counsel for the Chapter 13 Trustee took no position on the matter. At the conclusion of the hearing, the Court took the motion under advisement and provided Debtor's counsel the opportunity to brief the matter within 20 days. The Debtor filed her brief in support of the motion on June 10, 2022 (dckt. 40), and this matter is now ripe for ruling.

**III. Conclusions of Law**

A. Bankruptcy Rule 3002.1 Prevents Surprise Mortgage Charges

"A Chapter 13 bankruptcy—sometimes called a 'wage earners plan'—enables a debtor with a regular income to repay all or part of his debts, typically over a three- to five-year period." *Microf LLC v. Cumbess (In re Cumbess)*, 960 F.3d 1325, 1330 (11th Cir. 2020). The Debtor in a Chapter 13 case must file a plan of reorganization which, if it conforms to the Bankruptcy Code, will be confirmed by the court. Upon confirmation, the plan "becomes binding on the debtor, the creditors, and the Chapter 13 trustee[.]" *Id.* at 1330-31. Section 1322 of the Bankruptcy Code specifies certain mandatory and permissive contents of a Chapter 13 plan, and § 1325 sets forth the requirements for confirmation.

Pertinent to this case, §§ 1322 and 1325, taken together, "offer[] two distinct and well-established options for treatment of secured claims, especially mortgage loans." *In re Bullard*, 475 B.R. 304, 307 (Bankr. D. Mass. 2012) (quoting *In re Pires*, 2011 WL 5330772, at *3 (Bankr. D. Mass. Nov. 7, 2011)). The first option, discussed below, is that a plan may "modify the rights of holders of secured claims" under § 1322(b)(2). The second option, set forth in § 1322(b)(5), is that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). This Code section, which most often applies to a long-term real estate mortgage on the debtor's principal residence, "results in the reinstatement of the maturity of the obligation upon cure of defaults such that, at the conclusion of the case, the debtor is not in default" and "thus contemplates that the debtor will continue to make payments after the conclusion of the Chapter 13 case." Drake, Bonapfel, Goodman, *Chapter 13 Practice and Procedure* § 21:14 (2022 ed.).

The ability to cure defaults under § 1322(b)(5) "may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan." *Collier on Bankruptcy* ¶ 1322.09 (16th ed. 2022)). But, until 2011, it also created opportunities for mischief. That is because a mortgage creditor may incur additional fees, expenses, or charges in connection with the claim during the pendency of the

7

bankruptcy case. Prior to 2011, "mortgage lenders would forbear asserting new obligations in the bankruptcy proceedings for fear of violating the automatic stay" of 11 U.S.C. § 362(a), which prohibits most debt collection activities upon the filing of a bankruptcy petition. *PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 6 F.4th 503, 514 (2d Cir. 2021) (citing *Collier* ¶ 3002.1.RH (16th ed. 2020)). Consequently, "debtors who had completed their [C]hapter 13 plans were discovering that they had incurred new obligations and defaults." *Id.* In other words, a mortgage creditor might "silently accrue additional amounts and then spring a 'gotcha' foreclosure after the debtor has completed her plan and emerged from bankruptcy protection." *In re Roper*, 621 B.R. 899, 902 (Bankr. D. Colo. 2020).[4]

To remedy this problem, the Judicial Conference recommended, and the Supreme Court promulgated, Bankruptcy Rule 3002.1, which requires mortgage creditors to provide formal notice to debtors and trustees of additional charges. As the Judicial Conference's Advisory Committee on Bankruptcy Rules observed, "[t]imely notice" of post-petition fees, expenses, and charges "permit[s] the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment." Fed.

---

[4] *See also In re Sheppard*, No. 10-33959-KRH, 2012 WL 1344112, at *2 (Bankr. E.D. Va. Apr. 18, 2012) ("Bankruptcy Rule 3002.1 was adopted to resolve significant and often hidden problems encountered by Chapter 13 debtors who utilized § 1322(b)(5) of the Bankruptcy Code to cure mortgage defaults in their confirmed plan.").

R. Bankr. P. 3002.1 Advisory Committee Notes to 2011 Adoption. As a result, the rule "prevents lingering deficits from surfacing after the case ends." *Gravel*, 6 F.4th at 514. *See also In re Roe*, No. 18-50046, 2021 WL 2946167, at *2 (Bankr. W.D. Mo. July 13, 2021) ("The purpose of Rule 3002.1 is to promote transparent and timely notice and prevent the debtor from finding out near the end of the [C]hapter 13 case that the mortgage lender is holding the debtor responsible for years of accumulated legal fees and other charges.").

By its terms, Bankruptcy Rule 3002.1 "applies in a [C]hapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments."[5] Fed. R. Bankr. P. 3002.1(a). If both requirements are satisfied, the following provisions apply:

> **(c) Notice of Fees, Expenses, and Charges.** The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall

---

[5] As originally promulgated in 2011, Rule 3002.1(a) stated that it applied "in a [C]hapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan." Fed. R. Bankr. P. 3002.1(a) (2011 version). In 2016, the rule was amended to delete the reference to § 1322(b)(5), making "clear that the rule applies even if there is no prepetition arrearage to be cured." Fed. R. Bankr. P. 3002.1 Advisory Committee Notes to 2016 Amendments. "So long as a creditor has a claim that is secured by a security interest in the debtor's principal residence and the plan provides that contractual payments on the claim will be maintained, the rule applies." *Id.*

9

be served within 180 days after the date on which the fees, expenses, or charges are incurred.

. . .

**(e) Determination of Fees, Expenses, or Charges.** On motion of a party in interest filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

Fed. R. Bankr. P. 3002.1(c), (e). "Upon a debtor filing a motion to determine mortgage fees, expenses, and charges . . . the [c]ourt must look to the underlying agreement and applicable nonbanrkuptcy law to determine if the amounts are permissible." *In re England*, 586 B.R. 795, 799 (Bankr. M.D. Ala. 2018). Pursuant to Rule 3002.1(d),[6] this Court and others have held that mortgage creditors have the burden of proving "that their additional post-petition fees and charges are appropriate under Rule 3002.1." *In re LeGare-Doctor*, 634 B.R. 453, 458 (Bankr. D.S.C. 2021). *See also Trudelle v. PHH Mortg. Corp. (In re Trudelle)*, No. 16-60382-EJC, 2017 WL 4411004, at *9-10 (Bankr. S.D. Ga. Sept. 29, 2017); *In re Brumley*, 570 B.R. 287, 289-90 (Bankr. W.D. Mich. 2017).

---

[6] Rule 3002.1(d) states that the notice under subsection (c) is *not* subject to Bankruptcy Rule 3001(f), which provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

B. Rule 3002.1 Does Not Apply to Claims Valued under § 506(a)

Here, in an effort to comply with Rule 3002.1(c), Shellpoint timely filed its Notice of Postpetition Mortgage Fees, Expenses, and Charges within 180 days of the date on which fees were incurred. But the Debtor, in her Motion to Determine Mortgage Fees and Expenses filed pursuant to subsection (e) of the rule, argues that Rule 3002.1 does not apply to the claim of Shellpoint because one of the elements of subsection (a) is not satisfied. As to the first element, the term "debtor's principal residence" is defined by the Bankruptcy Code to mean "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property," including "a mobile or manufactured home[.]" 11 U.S.C. § 101(13A)(A), (B). Thus, the Debtor does not dispute that Shellpoint's claim is secured by a security interest in her principal residence, notwithstanding the fact that the collateral does not include any real property. Rather, she contends that the second element is not met because her confirmed Chapter 13 plan, which values Shellpoint's claim pursuant to § 506(a), does not provide for "contractual installment payments" to Shellpoint.

This case, therefore, turns on the meaning of the term "contractual installment payments" in Rule 3002.1(a). This is not a defined term in either the Bankruptcy

Code or the Bankruptcy Rules.[7] "In the absence of a statutory definition, [courts] interpret phrases in accordance with their ordinary meaning." *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261 (11th Cir. 2013). Here, the Court finds that the plain meaning of the term contractual installment payments refers to payments made pursuant to the original contract between the debtor and the secured creditor.[8] The Court therefore agrees with the Debtor that when a claim is valued under § 506(a) of the Code, plan payments on that claim are not contractual installment payments for purposes of Rule 3002.1(a).

The Bankruptcy Code permits a Chapter 13 debtor to propose a plan that alters the terms of certain contracts. Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims," with certain exceptions not applicable here.[9] 11 U.S.C. § 1322(b)(2). One permissible modification under §

---

[7] Section 101 defines certain terms that appear in the Bankruptcy Code, and Rule 9001 defines terms that appear in the Bankruptcy Rules.

[8] *Cf. LeGare-Doctor*, 634 B.R. at 459-60 (holding that Rule 3002.1 applied because the "Debtor's plan provide[d] for the repayment of advances that Debtor is contractually obligated to repay to Creditor under the Reverse Mortgage and because Debtor will maintain future contractual payments as they become due.")

[9] Specifically, § 1322(b)(2) excepts "a claim secured only by a security interest in real property that is the debtor's principal residence" from the general rule that a debtor may modify the rights of secured creditors. 11 U.S.C. § 1322(b)(2). This is commonly known as the anti-modification provision. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993) (holding that anti-modification provision cannot strip down a claim secured by a mortgage lien to the value of the property). Courts disagree as to whether "a claim secured only by a mobile home that constitutes personal property under state law is subject to modification," with the majority holding that such claims are not protected from modification by the anti-modification provision. *Chapter 13 Practice and Procedure* § 5:42. *See, e.g., Williamson v. Washington Mut. Home Loans, Inc.*, 387 B.R. 914 (Bankr. M.D. Ga. 2008) (applying Georgia law and concluding that mobile home was part of realty

1322(b)(2) is the bifurcation of a claim into secured and unsecured components pursuant to § 506(a). *Bullard*, 475 B.R. at 307. That provision states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Put another way, § 506(a) "limits the amount of a secured claim to the value of the encumbered property that is subject to the lien," with the creditor holding "a secured claim in the amount of the value of the encumbered property and an unsecured claim in the amount of the deficiency." *Chapter 13 Practice and Procedure* § 5:5.

When a claim is bifurcated pursuant to § 506(a), the debtor must pay the secured component in full pursuant to § 1325(a)(5)(B)(ii), which states that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim" must not be "less than the allowed amount of such claim[.]" 11 U.S.C. § 1325(a)(5)(B)(ii). *See also Assoc's. Com. Corp. v. Rash*, 520 U.S. 953, 956-57 (1997) ("Under the cram down option" of § 1325(a)(5)(B), "the debtor is required to provide the creditor with payments, over the life of the

---

for purposes of § 1322(b)(2)). Here, it is undisputed that Shellpoint's claim is not secured by real property, and thus the anti-modification provision does not apply.

plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral[.]"). The unsecured component, on the other hand, is treated like any other general unsecured claim and thus may receive less than full payment.[10] "A plan often provides for nominal payments on unsecured claims, or perhaps nothing at all." *Chapter 13 Practice and Procedure* § 5:5.

Plainly, a secured creditor whose claim is bifurcated pursuant to §§ 1322(b)(5) and 506(a) no longer enjoys the benefit of its original contract negotiated with the debtor. Rather, "[i]t is the Chapter 13 Plan, by which the debtor commits him[-] or herself, which becomes the modified contract between the debtor and creditors." *Martin v. CitiFinancial Serv. (In re Martin)*, 491 B.R. 122, 126 (Bankr. E.D. Cal. 2013) (citing *Hillis Motors v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors)*, 997 F.2d 581, 588 (9th Cir. 1993)). "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As such, following bifurcation, a debtor's plan payments to the affected secured creditor are not contractual installment payments for purposes of Bankruptcy Rule 3002.1 because the parties' original contract is no longer in force.

---

[10] The amount paid to unsecured creditors depends on the projected disposable income test of § 1325(b)(1)(B) and the "best interest of creditors test" of § 1325(a)(4). But, generally, a Chapter 13 plan may "modify the rights of . . . holders of unsecured claims[.]" 11 U.S.C. § 1322(b)(2).

While the Court has been unable to find case law directly on point, this analysis is supported by cases addressing short-term debts under § 1322(c)(2). Under that provision, "[i]n a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title" notwithstanding the anti-modification provision of § 1322(b)(2) for a claim secured by the debtor's principal residence. 11 U.S.C. § 1322(c)(2). "For example, if a mortgage debt includes a 'balloon' payment that becomes due during the term of the plan . . . the claim may be modified." *Chapter 13 Practice and Procedure* § 5:41.

In these circumstances, some courts have held that the confirmed plan does not provide for contractual installment payments. For example, in *In re Davenport*, 627 B.R. 705 (Bankr. D.D.C. 2020), the contract required the debtor to make interest payments of 10.5% per annum, but the confirmed plan, treating the claim under §§ 1322(c)(2) and 1325(a)(5), only provided for post-confirmation interest of 6% per annum. *Id.* at 734-35 n.32. The court held that this modification "eliminated [the creditors'] entitlement to contractual installment payments" and thus that "Rule 3002.1 [did] not apply to the postpetition attorney's fees incurred." *Id.* at 735. Likewise, a leading treatise states that "Bankruptcy Rule 3002.1 does not apply . . .

15

when the debtor's plan proposes to treat the claim other than by maintaining postpetition installment payments, such as by paying a short-term or matured secured debt in full over the term of the plan under Code § 1322(c)(2) or by paying the debt upon the sale of the property." *Chapter 13 Practice and Procedure* 18:3. *See also In re Tavares*, 547 B.R. 204, 215 (Bankr. S.D. Tex. 2016) (Rule 3002.1 "is entirely inapplicable to the instant case, because [the creditor's] claim was provided for under § 1322(c)(2)[.]").[11]

Here, the Debtor bifurcated Shellpoint's claim, which was secured by the manufactured home, pursuant to §§ 506(a) and 1322(b)(2), proposing payments in the amount of $175.00 per month at 5.00% interest. Those proposed repayment terms were modified in the consent order of October 5, 2021, which increased the value of the secured portion of Shellpoint's claim and required payments at 5.75% interest. When the Debtor's plan was confirmed on November 8, 2021, incorporating the terms of the consent order, the Debtor and Shellpoint became bound by those terms. The confirmed plan replaced the terms of the original contract. Accordingly, the Debtor's plan payments are not contractual installment payments, and Bankruptcy Rule 3002.1 does not apply to Shellpoint's claim.[12]

---

[11] *Tavares* was decided before the 2016 amendment to Rule 3002.1 removed the rule's reference to § 1322(b)(5). *Chapter 13 Practice and Procedure* 18:3 n.107.

[12] Because this case involves a confirmed plan, the Court need not determine whether the term "plan" in Rule 3002.1(a) includes a plan that is proposed but not yet confirmed. While a case may be dismissed under § 1307(c)(5) based on denial of confirmation and denial of a request for

C. <u>The Motion to Determine is Moot</u>

In her Motion to Determine Mortgage Fees and Expenses, the Debtor not only argues that Rule 3002.1 does not apply to the claim of Shellpoint, she requests that Shellpoint's asserted fees, expenses, and charges be disallowed in their entirety. The Debtor elaborates in her brief, asserting that the fees should be disallowed because Shellpoint failed to meet its burden of proof, failed to adequately describe the fees or to provide supporting documentation, failed to demonstrate that the fees were authorized by the underlying contract, and failed to show that the fees were reasonable. (Dckt. 40, pp. 3-5). Fearing that Shellpoint "may attempt to claim after discharge that those fees are due," the Debtor requests that the Court disallow the fees rather than simply denying the motion as moot. The Court, however, finds that Rule 3002.1 precludes disallowance in this case.

By its terms, Rule 3002.1 states that "[t]his rule applies" when the two required elements are met, namely that the claim be secured by the debtor's principal residence and that the plan provide for contractual installment payments. The rule goes on to set forth the procedure whereby the secured creditor provides notice of the additional fees using Official Form 410S-2, the debtor files a motion to

---

additional time to file another plan, the Bankruptcy Code does not contain a deadline by which confirmation must be accomplished in a Chapter 13 case. Accordingly, the 180-day deadline in which a secured creditor must file the notice required by Rule 3002.1(c) may expire before a debtor's plan is confirmed.

determine, and the court rules on whether the asserted fees are required by the underlying agreement and applicable nonbankruptcy law. Fed. R. Bankr. P. 3002.1(c), (d), (e). The plain language of the rule makes clear that this procedure does not apply when the claim is not secured by the debtor's principal residence or, as is the case here, the plan does not provide for contractual installment payments to the secured creditor. Accordingly, the Court is not authorized to disallow Shellpoint's asserted fees pursuant to Rule 3002.1.

As for the Debtor's fear that Shellpoint will attempt to collect the asserted fees after discharge—the very harm that Rule 3002.1 was designed to prevent—any attempt by Shellpoint to do so with respect to the Debtor[13] would be improper. Because Rule 3002.1 did not apply to its claim, Shellpoint's Notice of Postpetition Mortgage Fees, Expenses, and Charges had no effect. In other circumstances, courts have explained that a secured creditor who files a notice that is not required by Rule 3002.1 "gain[s] nothing" by doing so. *See In re Thongta*, 480 B.R. 317, 320 (Bankr. E.D. Wis. 2012) (quoting *In re Garduno*, No. 11-45243-EPK, 2012 WL 2402789, at *1 (Bankr. S.D. Fla. June 26, 2012)).[14] The filing of such improper notice does not

---

[13] Whether Shellpoint may seek payment of such fees against the estate of co-debtor Betty J. White is not before the Court.

[14] In *Garduno*, the debtor proposed to pay the mortgage creditor nothing through the plan, and for that reason the court ruled that Rule 3002.1 did not apply to the creditor's claim and that the creditor's notice of payment change had no effect. *Garduno*, 2012 WL 2402789, at *1. In *Thongta*, the mortgage creditor obtained stay relief, initiated foreclosure proceedings, and withdrew its

18

"trigger a need for [the debtor] to respond." *Id.* In short, neither the notice nor the motion to determine is required, and "neither will be given any effect[.]" *Id.* Instead, the Debtor's confirmed plan controls pursuant to § 1327(a).[15]

Here, the Debtor's confirmed plan incorporated the terms of the consent order resolving Shellpoint's objection to confirmation. All fees asserted by Shellpoint in the notice were incurred post-petition and prior to the date on which the consent order was issued, indicating that Shellpoint's assertion of those fees was superseded by the consent order and thus by the confirmed plan. Moreover, by bifurcating Shellpoint's claim and making deferred payments during the term of the plan pursuant to § 1325(a)(5)(B), the Debtor will have "necessarily satisfied the allowed amount of the secured claim," and "any balance remaining on the unsecured portion of the claim after payment in accordance with the plan [will be] discharged" under § 1328(a). *Chapter 13 Practice and Procedure* § 21:21. The debt having been discharged, Shellpoint would be unable to collect from the Debtor any further amounts in connection with this debt after the bankruptcy case is closed.

---

claim. The court ruled that the trustee's subsequent filing of a notice of final cure payment under Rule 3002.1(f), and the creditor's objection thereto, had no effect. *Thongta*, 480 B.R. at 318.

[15] *Cf. In re Edwards*, 604 B.R. 417, 426 (Bankr. S.D. Fla. 2019). ("[N]othing in the Bankruptcy Code or applicable law suggests that a creditor may collaterally attack a confirmation order, otherwise final and no longer subject to appeal, by the procedure provided in Bankruptcy Rule 3002.1.").

Finally, if this case is dismissed without entry of a discharge, then the parties' respective rights regarding the asserted fees would be restored to the pre-petition status quo by operation of § 349(b),[16] leaving them at liberty to litigate the propriety of those fees in state court. *See In re McCants*, 626 B.R. 80, 83 (Bankr. M.D. Ga. 2021) (holding that dismissal of bankruptcy case "erased the Creditor's objections under Rule 3002.1" and that "the Creditor's claim reverted to a mortgage default claim against the Debtor outside of a bankruptcy proceeding."). Thus, whether the Debtor's Chapter 13 case is successful or not, there is at present no basis for the Court to disallow Shellpoint's asserted fees.[17] *See Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 121 (11th Cir. 2021) (If the court "can no longer provide a plaintiff with effective relief, the case is usually moot."). For these reasons, the

---

[16] Section 349(b) provides that dismissal of a case "(1) reinstates—(A) any proceeding or custodianship superseded under section 543 of this title; (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and (C) any lien voided under section 506(d) of this title; (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b). "Thus, insofar as the dismissal of a bankruptcy case is concerned, the aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case was filed." *First Nat'l Bank of Oneida, N.A. v. Brandt*, 887 F.3d 1255, 1261 (11th Cir. 2018) (citing *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017)).

[17] Section 506(b) of the Code states that "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). In other words, an over-secured creditor is permitted to recover post-petition attorney's fees. Here, however, Shellpoint has not moved for allowance of any post-petition fees under § 506(b) and, in any event, is not an over-secured creditor because its claim exceeds the stipulated $8,268.73 value of the manufactured home.

20

Court will deny as moot the Debtor's Motion to Determine Mortgage Fees and Expenses (dckt. 36) by separate order.

Dated at Savannah, Georgia, this 19th day of July, 2022.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia